[Crim. No. 18942. In Bank. Apr. 20, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD CHARLES GUERRERO, Defendant and Appellant.

## COUNSEL

David L. Armen, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Nancy A. Saggese, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—Defendant Richard Charles Guerrero, appealing from a judgment of conviction of first degree murder, attacks the admission of testimony concerning his commission of an uncharged rape occurring on an earlier occasion and involving a different victim.

Defendant was accused of murdering Roberta Santana, a 17-year-old girl. The trial court, after a lengthy hearing on the issue, decided that the testimony of Irene Lopez, who claimed that defendant had raped her six weeks before the alleged murder, could be introduced on the issues of identity and intent.

Miss Lopez, whose testimony before the jury was substantially the same as that presented at the court hearing, stated that one summer night she, two girl friends, defendant and two other males left a party together and went riding in defendant's automobile. There followed a haphazard sequence of "cruising" up and down the same street, stopping at liquor stores and a hamburger stand, dropping off some passengers, picking up

others. Miss Lopez, the only female remaining in the car, repeatedly asked to be taken home. Instead, defendant drove to a secluded area where he and two friends forced Miss Lopez to commit acts of oral copulation and to submit to sexual intercourse. One of defendant's friends warned Miss Lopez not to report the rapes or "we will tell everyone what we did." A few minutes later defendant, while driving, picked up a lug wrench with his right hand, turned to Miss Lopez, and smiled. She interpreted this gesture to be a threat.

Six weeks later, Miss Santana—the present victim—was walking to a party with a girl friend when defendant and another male offered them a ride. Finding no such party, the four "cruised," bought some liquor, and stopped in a parking lot. Defendant then dropped off his friend and the victim's girl friend, telling them he would take Miss Santana home and return in an hour. A few hours later, Miss Santana's body was found by a passerby. She was fully clothed; while her blouse was above her brassiere, that garment was in place. There was no evidence of sexual molestation; an investigation revealed no trace of sperm or vaginal trauma.

Much of the trial was focused on the conflicting testimony of two pathologists. The defense expert testified that the victim could have died as a result of jumping or falling from the car; the pathologist called by the People declared that only blows to the head by a blunt instrument could have caused Miss Santana's death. These blows could have been inflicted by a lug wrench, he testified. Despite a thorough search of defendant's car, no wrench was found.

In ruling that testimony concerning the Lopez rape could be admitted, the court pointed to a number of asserted similarities between the rape and the charged murder: (1) each offense involved the use of a maroon Pontiac Le Mans automobile, with defendant driving; (2) the victims were approximately the same age (i.e., 17); (3) on both occasions defendant initially had other males with him in the car; (4) in each offense defendant drove around the city, stopping at the same parking lot; (5) in each case the parties made stops to buy beer and wine and each time defendant drove while drinking Budweiser beer; (6) each offense involved "sexually oriented activity"; (7) both times "the defendant took or attempted to take the girl home alone";[1] and (8) on

---

[1]The sixth and seventh asserted similarities are unsupported by the evidence. As will be discussed below, there was no evidence of sexual activity in the death of Miss Santana. Further, there was no attempt to take Miss Lopez home alone.

both occasions "the court can infer from the evidence that the defendant used a wrench."

We must determine whether the court committed prejudicial error in admitting testimony concerning the rape of Miss Lopez and testimony about defendant's threat with a lug wrench.

There is little controversy over the applicable principles of law. It is well established that evidence of other crimes is inadmissible to prove the accused had the propensity or disposition to commit the crime charged. (Evid. Code, § 1101, subd. (a); *People* v. *Kelley* (1967) 66 Cal.2d 232, 238 [57 Cal.Rptr. 363, 424 P.2d 947].) The reason for this rule is not that such evidence is never relevant; to the contrary, the evidence is excluded because it has too much probative value. "The natural and inevitable tendency of the tribunal . . . is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge." (1 Wigmore, Evidence (3d ed. 1940) p. 646, quoted in *People* v. *Schader* (1969) 71 Cal.2d 761, 773, fn. 6 [80 Cal.Rptr. 1, 457 P.2d 841].)

■ It is equally well settled that evidence may be admitted, even though it embraces evidence of the commission of another crime, if it logically tends to prove a material element in the People's case. (Evid. Code, § 1101, subd. (b); *People* v. *Kelley, supra,* 66 Cal.2d 232, 239.) However, "It has frequently been recognized . . . that because of the sound reasons behind the general rule of exclusion, the relevancy of evidence of other crimes, and therefore its admissibility, must be examined with care. [Citation.] The evidence should be received with 'extreme caution,' and if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused. [Citations.]" (*Id.,* at p. 239.)

■ Thus, admission of other crimes evidence cannot be justified merely by asserting an admissible purpose. Such evidence may only be admitted if it "(a) 'tends logically, naturally and by reasonable inference' to prove the issue upon which it is offered; (b) is offered upon an issue which will ultimately prove to be material to the People's case; and (c) is not merely cumulative with respect to other evidence which the People may use to prove the same issue." (*People* v. *Schader, supra,* 71 Cal.2d 761, 775.)

■ Applying these principles, we conclude first that the testimony concerning the rape cannot be admitted on the issue of identity. Defendant's presence at the scene of the crime was well established by other evidence. He was the last person seen with the victim; they were witnessed driving together just a few hours before her body was found. The grandmother of defendant's child told an investigator that defendant "said he was innocent and that the girl jumped from the car," further evidence of defendant's presence. When defendant visited his girl friend on the day of the crime, he parked his car behind her apartment house, rather than on the street where he usually left it. Near Miss Santana's body investigators found a wine bottle bearing the same brand as one defendant bought earlier. Blood was found on some of defendant's clothes. When police arrested defendant on the day of the alleged murder, he said, "I didn't kill her," a statement suggesting he knew of Miss Santana's death. All this evidence, in addition to the lack of an alibi defense, points to the fact that defendant was with Miss Santana at or near the time she died.

On the issue of identity the evidence of the Lopez crime is not only cumulative, it is also irrelevant. Few of the asserted similarities between the Lopez and Santana offenses aid in placing defendant at the scene of the alleged murder. For example, the evidence in the present case established that defendant, having spent an evening "cruising" and drinking Budweiser, was seen driving with the victim in his maroon Pontiac a few hours before her body was found. The fact that defendant also drank beer and cruised around the city six weeks earlier prior to committing a rape adds nothing on the issue of identity. If the victim had been attacked in a distinctive manner that was identical to a previous crime defendant had committed, then the evidence of the other crime might have probative value. But the only claimed connection that has any logical relevance is evidence of "sexual activity" in both cases and the possible use of a wrench. Even if both facts were established—which, as will be discussed, is highly dubious—it could not reasonably be claimed that the two offenses were committed in a particularly distinct manner that tends to inculpate defendant. (*People* v. *Haston* (1968) 69 Cal.2d 233, 248 [70 Cal.Rptr. 419, 444 P.2d 91].) The testimony concerning the Lopez rape and the threat with a wrench, therefore, is inadmissible on the issue of identity.

■ The next question is whether the testimony is admissible to show defendant's intent. In this regard, the People maintain that evidence of

the Lopez offense shows that defendant killed Miss Santana in the course of an attempted rape.[2]

The People rely on a portion of *People* v. *Kelley, supra,* 66 Cal.2d 232, 242-243, in which we declared that other-crimes evidence may be introduced to show intent where the proof of such intent is ambiguous. They argue that the facts of the Santana offense are ambiguous, and thus evidence of the Lopez rape is admissible to show that defendant "had the intent and motive to achieve sexual gratification from [Miss Santana]." They also contend that the Lopez offense may be used to prove defendant's premeditated intent to kill Miss Santana.

The major flaw in the People's rationale is that it misinterprets *Kelley* to mean that evidence of other crimes may be introduced to show the otherwise ambiguous intent behind an act even when there is little evidence that the act has in fact been committed. Actually, we declared in *Kelley* that such evidence may be used "in cases where the proof of defendant's intent is ambiguous, *as when he admits the acts* and denies the necessary intent because of mistake or accident." (*Ibid.;* italics added.) Indeed, the standard framework for admission of evidence of other crimes is if there is no doubt that defendant has committed an act, but some question as to his intent in doing so. For example, in *People* v. *Schader, supra,* 71 Cal.2d 761, defendant was indisputably standing on the perimeter of a grocery store while his uncle was robbing it, but denied he knew his uncle was holding up the store. To counter this denial, evidence of previous robberies by the two men—in which defendant actively wielded the pistol and took the money while his uncle stood by to guard against disturbance—was validly admitted to show the likelihood that defendant knew what his uncle was doing. In *Schader* and all the cases in which other crimes evidence has been introduced to show the intent behind an act, there has been some independent evidence that the act was committed.

In the present case, it is indisputable that Miss Santana died and there is ambiguity in the evidence over whether death was caused by blows from a blunt instrument or by a fall. Evidence of the Lopez rape does nothing to resolve that ambiguity. Defendant never struck Miss Lopez with his wrench. Even if defendant's allegedly threatening gesture with

---

[2]At the request of the People, the trial court instructed the jury not only on first degree murder in the course of a rape or attempted rape, but also on wilful, deliberate, and premeditated murder. The prosecutor informed the jury he was relying chiefly on the former charge.

the wrench may be admitted—an issue we discuss below—the gesture did not take place until after the rape had been committed. Thus it was not necessary to introduce the rape to establish that defendant owned a wrench and once appeared to threaten its use. "In every case the possibility of severing relevant from irrelevant portions of evidence should be considered to protect the accused from undue prejudice." (*People* v. *Kelley, supra,* 66 Cal.2d 232, 239, citing *People* v. *Dabb* (1948) 32 Cal.2d 491, 500 [197 P.2d 1].) Thus evidence of the earlier rape cannot be admitted to prove that Miss Santana was killed intentionally rather than accidentally.

■ Neither can the Lopez rape evidence be used to show that defendant killed Miss Santana in the course of an attempted rape. In the Santana offense, there is no evidence whatsoever of sexual intercourse or attempted sexual intercourse which the Lopez rape might explain. Miss Santana's body was fully clothed when found, only her blouse in disarray. That circumstance could have been caused by a fall or by a struggle to ward off a nonsexual attack. As related above, an examination revealed no trace of sperm or trauma related to a sexual approach.

The paucity of evidence of any actual or attempted sexual activity is revealed in the summation of the district attorney at trial. After positing the rhetorical question, "Where is the proof of rape?" he declared, "Well, first of all, obviously it is a boy-girl situation," and with "young, healthy people . . . things like this generally happen at late hours." Then he noted that defendant drove the victim to a secluded spot, an action not inconsistent with activity unrelated to sex. The prosecutor pointed out that when defendant dropped off the two other passengers, he promised to return in an hour, when in fact a trip to the victim's home and back would only have taken one-half hour. Again, any inference that could be drawn from that fact is extremely speculative. Finally, the prosecutor surmised that defendant may have bought the bottle of wine found near the victim just before driving away with her, though no evidence tied him directly to that bottle. None of this evidence, either individually or cumulatively, amounts to a showing that sexual activity took place between defendant and Miss Santana. Contrary to the prosecutor's broad assumption, boy plus girl does not invariably equal sex.

In fact, the evidence appears far less indicative of an attempted rape than the evidence found wanting in *People* v. *Craig* (1957) 49 Cal.2d 313 [316 P.2d 947]. In *Craig,* defendant was accused of the rape-murder of a

woman. The woman was found with her raincoat ripped open, and "the nightgown or slip and the panties were torn open so that the front part of the body was exposed. She was lying on her back with her legs spread slightly apart. Her panties which had been torn open in the front were under her . . . . The victim. had suffered multiple contusions and lacerations of the face, both breasts, and of the area around the breasts." (*Id.,* at p. 316.) In addition, the defendant had expressed the desire for "a little loving," and had been markedly hostile to a woman who had refused to dance with him earlier in the evening. We held that the physical evidence showed only that a struggle took place, not that defendant had sexually assaulted the victim; the statements made by defendant did not tend to show an intent to rape, but rather merely a desire for female companionship; and therefore defendant could only be convicted of second degree murder. In the present case, the evidence of sexual activity is even more conjectural. As the People candidly concede, without evidence of the Lopez rape "the entire case would have been decided on the basis of speculation."

Thus, the argument of the People is circular: (1) sexual activity must have taken place in the Santana offense because defendant's rape of Miss Lopez demonstrates his aggressive sexual tendencies; (2) therefore, evidence of the Lopez rape may be introduced to show the intent with which defendant tried to engage in sex with Miss Santana. The first premise, of course; seeks to prove defendant's conduct in this case by means of evidence of his criminal disposition. Such proof is expressly prohibited by Evidence Code section 1101, subdivision (a).

The flaw in the rationale of the People is revealed if we hypothesize that instead of raping Miss Lopez, defendant and his two friends had robbed her. Under the prosecution theory such Lopez robbery could then be admitted to show that the Santana offense was murder in the commission of a robbery, notwithstanding the fact that no property had been taken from Miss Santana. In short, the People may not conjure up an attempted rape in this instance in order to introduce evidence of another rape.

Even if arguendo the People's reasoning were theoretically sound, they have not shown that the similarities between the two offenses are substantial enough to have probative value. As we noted in *People* v. *Haston, supra,* 69 Cal.2d 233, 246, footnote 15, "it would be possible to list any number of marks common to the charged and uncharged crimes each of which is so lacking in distinctiveness that its presence, whether or

not in combination with other equally nondistinctive factors, is wholly lacking in significance. . . . The sum of zeroes is always zero." This appears to be the situation in the case at bar. It cannot be reasonably inferred that because prior to the commission of the Lopez rape defendant in the company of others cruised up and down the street in his Pontiac, dropping off and picking up passengers, looking for parties, and drinking beer, his participation in arguably comparable activities six weeks later logically leads to the conclusion that he intended to rape Miss Santana. If aimless cruising and drinking beer were distinctive earmarks of criminal behavior, a large percentage of the teenage population of Southern California would be prime suspects in this case. The asserted similarities between the Lopez and Santana offenses add up to little more than zero. And the dissimilarities are substantial, highlighted by the facts that Miss Lopez was raped and Miss Santana was not; Miss Santana was killed and Miss Lopez was not; and defendant was accompanied by two friends in the Lopez rape, while he was charged with acting alone in the Santana offense. We therefore conclude that the evidence of the Lopez rape is inadmissible to show intent to rape Miss Santana.

For the foregoing reasons, the rape evidence also may not be used to prove murder by premeditation. The People contend that defendant intended from the beginning to rape Miss Santana, or to kill her if she resisted too fiercely. But the rape of Miss Lopez does not tend to demonstrate, by itself, premeditation in this case. The only evidence that conceivably might do so is defendant's implied threat with the wrench. As noted above, evidence of the wrench can readily be severed from the inadmissible rape evidence.

■ We turn then to the issue of whether defendant's threat with the wrench may be admitted. Clearly, Miss Lopez or other witnesses could have testified that defendant possessed a wrench in his car six weeks prior to the Santana death. But defendant's act of displaying the wrench to Miss Lopez presents a different question. Defendant did not actually use the wrench on her and it is not entirely clear that his action constituted a threat, although she so interpreted it. Evidence of an ambiguous threat purportedly made to silence Miss Lopez after a rape was committed by three persons is not so similar to the actual use of a wrench in an offense in which no rape is committed that it tends to prove a material element of the People's case. Its probative value, if any, is substantially outweighed by the prejudicial impact of demonstrating to the jury that defendant in the past has been a violent person, and

therefore must have killed Miss Santana. (Evid. Code, § 1101, subd. (a).) The court thus erred in admitting evidence that defendant threatened Miss Lopez with a wrench.

■ Our only remaining question is whether the court's errors were prejudicial. The harmful impact of the admission of testimony concerning the threat with the wrench is debatable and alone would not justify reversal. However, the admission of evidence of the sexual offense is prejudicial beyond a shadow of a doubt. The Lopez rape was particularly brutal and abhorrent. No limiting instruction, however thoughtfully phrased or often repeated, could erase from the jurors' minds the picture of defendant's role in raping a 17-year-old girl and forcing her to commit oral copulation. "The net effect to the jury was to paint a sign on [defendant] which said 'rapist.'" (*People* v. *Holbrook* (1974) 43 Cal.App.3d 636, 640-641 [117 Cal.Rptr. 804].) Defendant had a right to be tried solely for the murder of Miss Santana. Instead, he found himself charged also with the rape of Miss Lopez. He deserves a new trial on relevant, nonprejudicial evidence.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.