[Crim. No. 29952. Second Dist., Div. Two. Jan. 3, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
FRED HARVEY, Defendant and Appellant.

**COUNSEL**

James Alle, under appointment by the Court of Appeal, for Defendant and Appellant.

Paul Halvonik, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, and Tracy S. Rich, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FLEMING, Acting P. J.**—Death penalty case transferred from the Supreme Court[1] for modification of the sentence to life imprisonment in accordance with *Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420 [134 Cal.Rptr. 650, 556 P.2d 1101]. The grand jury returned an indictment charging first degree murder of a police officer using a firearm; assault with a deadly weapon; kidnap; a second assault with a deadly weapon; robbery with a firearm; and attempted rape with use of a firearm. Two prior felony convictions were admitted. The court dismissed the robbery count (Pen. Code, § 1118.1), and the jury found appellant guilty of the

---

[1]By order dated 25 January 1977 in file.

remaining charges. In the special-circumstances phase of the cause the allegation of murder of a police officer was found to be true (Pen. Code, § 190.2), sentence of death was imposed on that count, and sentences on the remaining four counts were imposed consecutively to one another and to any sentence imposed on count I if the sentence of death were stricken.

Apart from his argument to modify the death sentence pursuant to *Rockwell*, appellant raises only issues of grand jury procedure: principally, that his accusation by grand jury indictment instead of by information was unconstitutional in that it denied him the fundamental right of preliminary hearing at a "critical phase" of the proceedings, in violation of due process and equal protection of law.

Since the facts are not relevant to the contentions on appeal, a brief outline will suffice. With his hair rolled in distinctive yellow plastic curlers, appellant accosted the kidnap victim at a busstop late at night, forced her at gunpoint to enter his vehicle, and then attempted to rape her in an open field. She escaped through a ruse, fled to a nearby friend's house, and called the police. While two officers were attempting to capture appellant in a lonely field near an oil tank in Signal Hill, appellant shot and killed Officer Birdsall. Shortly thereafter police officers captured appellant, still wearing the yellow curlers. The kidnap victim identified him at a line-up. His fingerprints were found on her driver's license, on a cookie wrapper from the lunch she had been carrying, and in the Oldsmobile station wagon she had been forced to enter. In the vicinity of the murder, a weapon, expended cartridges, and yellow curlers were found. Additionally, appellant made incriminating admissions during pretrial incarceration, such as, "I can't—they really got me because I really blew him up," and "Well, okay, I will stand in a lineup, because the only one that can identify me is dead, and he is a policeman." The foregoing facts demonstrate that the evidence supports the convictions, and appellant does not contend otherwise.

I

■ California courts have rejected appellant's argument that grand jury accusation without opportunity for preliminary hearing (Cal. Const., art. I, § 14) is unconstitutional. (*People* v. *Sirhan* (1972) 7 Cal.3d 710, 746-747 [102 Cal.Rptr. 385, 497 P.2d 1121]; *People* v. *Newton* (1970) 8 Cal.App.3d 359, 388 [87 Cal.Rptr. 394].) The United States Supreme

Court has likewise rejected such arguments. (See *Goldsby* v. *United States* (1895) 160 U.S. 70, 73 [40 L.Ed. 343, 344-345, 16 S.Ct. 216]; cf. *Lem Woon* v. *Oregon* (1913) 229 U.S. 586 [57 L.Ed. 1340, 33 S.Ct. 783].) Although a minority of justices has expressed its reservations about grand jury accusation, (*Johnson* v. *Superior Court* (1975) 15 Cal.3d 248, 255-270 [124 Cal.Rptr. 32, 539 P.2d 792]), this court is bound to follow existing majority opinion and reject appellant's contention that grand jury accusation is unconstitutional. (*People* v. *Superior Court (Persons)* (1976) 56 Cal.App.3d 191, 193-194 [128 Cal.Rptr. 314].)

■ Appellant claims the prosecutor suppressed evidence at the grand jury hearing. The assertedly suppressed evidence was the fact that the kidnap victim in her first two reports to the police did not mention the specific sexual remarks made by appellant during her abduction and about which she testified before the grand jury. Appellant's remarks were crude and vulgar and it might well have embarrassed the victim to repeat them verbatim to the officers. Her reluctance to repeat appellant's gutter language does not tend to explain away the charge against appellant or raise an inference of his innocence of crime. Clearly, the prosecutor's omission to mention to the grand jury the victim's initial reluctance to repeat appellant's vulgarities did not amount to suppression of evidence, did not inject an element of unfairness or unreliability into the grand jury hearing that preceded indictment.

## II

■ Respondent contends appellant should be returned to the trial court for resentencing under the newly adopted death penalty statute (Stats. 1977, ch. 316, No. 6 West's Cal. Legis. Service, p. 922, No. 2 Deering's Adv. Legis. Service, p. 1), effective 11 August 1977. Under the present statute, as under its predecessor, the victim's status as a peace officer provides ground for imposition of the death penalty (Pen. Code, § 190.2); but the new law purports to remedy the federal constitutional infirmities of mandatory death penalty, noted in *Gregg* v. *Georgia* (1976) 428 U.S. 153 [49 L.Ed.2d 859, 96 S.Ct. 2909], and in *Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420 [134 Cal.Rptr. 650, 556 P.2d 1101], by making mitigating circumstances relevant to imposition of sentence. Respondent argues that under the recent United States Supreme Court case of *Dobbert* v. *Florida* (1977) 432 U.S. 282 [53 L.Ed.2d 344, 97 S.Ct. 2290] no ex post facto or other constitutional objection prevents imposition of the death penalty under the new statute to persons whose causes are presently pending on appeal.

In *Dobbert,* the defendant's crime was punishable by death at the time of its commission, but the statute authorizing the imposition of punishment was later ruled constitutionally infirm. By the time defendant came to trial, however, that statute had been replaced by a second statute which constitutionally imposed the death penalty. The Supreme Court found no constitutional impediment to application of the new sentencing procedure to defendant and upheld the imposition of the death penalty, because, although conceptually no valid death penalty statute had been in effect at the time defendant committed his crime, in point of fact the statute was on the books, defendant was on fair notice that his crime was punishable by death, and the subsequent procedural change in the statute made the procedure for imposition of the death penalty more advantageous and not more burdensome to the defendant. Procedural changes do not amount to ex post facto violations, said the court. Nor was there any denial of equal protection of the laws, for although other defendants tried and sentenced to death under the invalid law had had their sentences reduced to life imprisonment, Dobbert was in a different class from them because he had been tried and sentenced under the new law. *Dobbert* implies it would not be a violation of the federal constitutional prohibition against ex post facto law to try and sentence a defendant to death under a new death penalty statute for a crime committed during the existence of an earlier death penalty statute later found procedurally invalid under the federal constitution. The death penalty has been authorized in California since the adoption of a constitutional amendment in November 1972 (Cal. Const., art. I, § 27), which validated all death penalty statutes in existence in February 1972.[2] Under *Dobbert,* procedural changes in the administration of such laws could be retroactively applied; it follows that if a defendant committed his crime while a procedurally defective death penalty law was in effect but came to trial after the procedural defects had been corrected, he could be validly sentenced to death.

However, the facts in this case are not those of *Dobbert,* and the decisive issue is not that of ex post facto law. Appellant was tried and sentenced under a death penalty law whose procedures did not comport

[2]California Constitution, article I, section 27:

"All statutes of this state in effect on February 17, 1972, requiring, authorizing, imposing, or relating to the death penalty are in full force and effect, subject to legislative amendment or repeal by statute, initiative, or referendum.

"The death penalty provided for under those statutes shall not be deemed to be, or to constitute, the infliction of cruel or unusual punishments within the meaning of Article 1, Section 6 nor shall such punishment for such offenses be deemed to contravene any other provision of this constitution."

with the federal Constitution. Dobbert, on the other hand, was tried and sentenced under a death penalty law whose procedures fully complied with the federal Constitution. The crucial distinction is that appellant, unlike Dobbert, has already been sentenced to death under the earlier law. His life has been placed in jeopardy, and the decisive issue is whether a new sentence of death would amount to double jeopardy.[3]

The time sequence here is controlling. Appellant was tried and sentenced to death in June 1976 under the earlier death penalty law. In December 1976 *Rockwell* declared that only life imprisonment could be constitutionally imposed under that law. In practical effect that declaration automatically reduced appellant's sentence to life imprisonment as of December 1976. (Cf. *People* v. *Murphy* (1972) 8 Cal.3d 349, 352 [105 Cal.Rptr. 138, 503 P.2d 594].) When on appeal this court mechanically carries out the mandate of *Rockwell,* the prohibition against double jeopardy precludes any subsequent increase in punishment based on a new death penalty statute adopted in August 1977. Such an increase would be comparable to an increase in punishment on retrial, an increase foreclosed by *People* v. *Henderson* (1963) 60 Cal.2d 482, 497 [35 Cal.Rptr. 77, 386 P.2d 677],[4] as an impairment of the right to appeal. The instant appeal was automatic (Pen. Code, § 1239), and only by reason of its existence did it become technically possible for respondent to argue the applicability to appellant of the second death penalty statute. Had the cause become final and had appellant been awaiting execution on death row, there would be no question of resentence. We think *Henderson* proscribes any increase in appellant's present life sentence. Such an increase would indeed penalize appeal and put appellant in jeopardy of his life a second time. The double jeopardy clause was intended to prevent such occurrence, and in our view the existence of automatic appeal does not waive such protection. (Cf. *Green* v. *United*

---

[3] United States Constitution, Amendment V: ". . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb. . . ." California Constitution, article I, section 15: "Persons may not twice be put in jeopardy for the same offense. . . ."

[4] *People* v. *Henderson* holds that the protection of double jeopardy bars an increase in punishment after appeal and retrial, and that the right to appeal may not be conditioned on such unreasonable conditions as putting one's life at risk. (See *Gomez* v. *Superior Court* (1958) 50 Cal.2d 640 [328 P.2d 976]; *People* v. *Ali* (1967) 66 Cal.2d 277 [57 Cal.Rptr. 348, 424 P.2d 932]; *People* v. *Hood* (1969) 1 Cal.3d 444, 459 [82 Cal.Rptr. 618, 462 P.2d 370].) The United States Supreme Court agrees that an appellant cannot be convicted of a greater offense on retrial (*Green* v. *United States* (1957) 355 U.S. 184 [2 L.Ed.2d 199, 78 S.Ct. 221, 61 A.L.R.2d 1119]), but has held that under certain circumstances the *punishment* may be increased after retrial without violating the double jeopardy clause. (*North Carolina* v. *Pearce* (1969) 395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072]; *Chaffin* v. *Stynchcombe* (1973) 412 U.S. 17 [36 L.Ed.2d 714, 93 S.Ct. 1977].)

*States* (1957) 355 U.S. 184 [2 L.Ed.2d 199, 78 S.Ct. 221, 61 A.L.R.2d 1119].)

The case of *Ex Parte Lange* (1874) 85 U.S. (18 Wall.) 163 [21 L.Ed. 872], although quite different on its facts, is both analogous and instructive. Lange had been convicted of theft of mailbags and been sentenced to serve one year in prison and pay a fine of $200. However, the punishment specified by statute for his crime was imprisonment for one year *or* a fine up to $200. After Lange had promptly paid his fine, the trial court vacated its sentence and resentenced Lange to imprisonment for one year. On Lange's petition for habeas corpus he was ordered released on the ground he could not twice be placed in jeopardy for the same offense. The court pointed out that the essential danger inherent in double jeopardy lies in punishment even more than in prosecution and declared that the constitutional provision applies,

". . . to all cases where a second punishment is attempted to be inflicted for the same offence by a judicial sentence.

"For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offence? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? Is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction a second punishment inflicted?

"The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it." (P. 173 [21 L.Ed. p. 878].)

The court's conclusion in *Lange* that petitioner could not be punished twice for the same offense is relevant to the present case. At bench appellant has been improperly sentenced to a more serious punishment, a punishment subsequently declared invalid on constitutional grounds.

Even though appellant's death sentence has not been executed, we think the argument irresistible that the prohibition against double jeopardy forecloses a further sentence in an attempt to reimpose the more serious punishment on him. (*United States* v. *Wilson* (1975) 420 U.S. 332, 343 [43 L.Ed.2d 232, 241, 95 S.Ct. 1013].) Were appellant remanded for resentence under the new law he would be entitled to plead a former judgment of conviction and sentence (Pen. Code, §§ 1016, 1023) and to assert that his cause, in the words of *Dobbert,* "had progressed sufficiently far in the legal process so as to be governed solely by the old statute, with the concomitant unconstitutionality of its death penalty provision. . ." (432 U.S. at p. 301 [53 L.Ed.2d. at p. 361]).

### III

The trial court imposed sentence of death on count I. It also sentenced appellant to state prison on the remaining counts; the latter sentences were ordered to run consecutively to one another but were stayed pending execution of sentence on count I. Under the terms of the trial court's order, if sentence of death on count I were later reduced to a penalty less than death, sentences on the remaining counts would run consecutively to the sentence on count I. Since we must reduce the sentence on count I to life imprisonment, we must modify the other sentences as well, because the Penal Code prohibits the imposition of sentences consecutive to a life sentence. These other sentences merge into and run concurrently with the life sentence. (Pen. Code, § 669, *People* v. *Crosier* (1974) 41 Cal.App.3d 712, 728 [116 Cal.Rptr. 467].) ■ Courts are without authority to tack additional sentences or enhancements onto a life sentence to lengthen the time to be served before eligibility for parole. (*People* v. *Walker* (1976) 18 Cal.3d 232, 243-244 [133 Cal.Rptr. 520, 555 P.2d 306] (enhancement under Pen. Code, § 12022.5, interpreting Pen. Code, § 3046 regarding eligibility for parole).)

The sentence on count I is modified to impose imprisonment in state prison for life. The sentences on the remaining counts are merged into the life term and ordered to run concurrently with it. As modified, the judgment of conviction is affirmed.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied February 2, 1978. Beach, J., was of the opinion that the petition should be granted. The petitions of both parties for a hearing by the Supreme Court were denied March 2, 1978.