[Crim. No. 29955. Second Dist., Div. Four. May 30, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS SAND, Defendant and Appellant.

COUNSEL

Paul Halvonik and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Edward H. Schulman and Tracy S. Rich, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KINGSLEY, J.**—In a three-count information, defendant was charged with having committed, on December 23, 1974, the offenses of murder (Pen. Code, § 187), robbery (Pen. Code, § 211) and burglary (Pen. Code, § 459). In the murder count, two items of special circumstances were alleged. One item of special circumstances alleged was that defendant had committed the murder during the commission and attempted commission of a robbery in violation of section 211 of the Penal Code. A second item of special circumstances alleged was that defendant had committed the murder during the commission and attempted commission of a burglary in violation of section 460, subdivision 1 of the Penal Code.

Defendant was found guilty as charged in the three counts, with the murder being fixed as murder of the first degree, the robbery being fixed as the first degree, and the burglary being fixed as the first degree. The allegations with respect to the two items of special circumstances were found by the jury to be true. Defendant received a death sentence on the murder conviction. Defendant was sentenced on the robbery and burglary convictions to state prison for the terms prescribed by law, with the sentences to run concurrently with each other. Execution of sentence on the robbery and burglary convictions was stayed pending appeal from the murder conviction. Defendant has appealed; we modify the judgment and affirm it as modified.

The victim of the three offenses was Angelina Marino, a 72-year-old woman. She was found stabbed to death in her apartment. There were 61 stabbing and cutting wounds altogether. In addition to the stab wounds,

there were several areas of trauma which appeared to be produced by a blunt instrument. There was evidence that the victim's apartment had been broken into and assorted items of jewelry had been removed from the victim and her apartment. The evidence against defendant was primarily circumstantial but of a convincing nature.

On appeal, defendant does not advance any contention with respect to insufficiency of the evidence to sustain the convictions. In view of this fact, setting forth the evidence introduced against defendant becomes unnecessary. Essentially defendant makes three contentions on this appeal: (1) that the exclusion, prior to the guilt phase of defendant's trial, of prospective jurors who expressed conscientious scruples against capital punishment to the extent that they could not vote for the death penalty irrespective of the evidence, amounted to a denial of his constitutional rights to due process of law, equal protection of the laws and a right to an impartial trial by jury; (2) that the trial court erred in permitting the prosecutor to introduce evidence of defendant's assault on a police officer upon defendant's initial arrest for being drunk in public; and (3) that the sentence of death is invalid in view of the California Supreme Court's holding in *Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420 [134 Cal.Rptr. 650, 556 P.2d 1101], that Penal Code sections 190 and 190.3 were invalid with respect to imposition of the death penalty.

I

In the selection of jurors for the guilt phase of defendant's trial, the trial court conducted a voir dire examination of prospective jurors designed to elicit information as to whether they had conscientious scruples against the death penalty to such an extent that it would affect their ability to fairly and impartially determine defendant's guilt or determine whether any of the special circumstances alleged were true or not. As a result of such voir dire examination, six prospective jurors were excused *for cause* and one prospective alternate juror was so excused.

Defendant makes two contentions: (1) that, in light of the 1973 revision of sections 190.1 and 190.2, under which the jury finds only the facts of the alleged special circumstances, but the imposition of the death penalty is an act of the trial judge, the California cases decided under the pre-1973 statute are no longer applicable; and (2) that, even if it is proper to exclude jurors with an unalterable opposition to the death penalty from determining the special circumstances issue, it was error to exclude them from determining the guilty phase. We reject both contentions.

(1) It is true that, in form, a post-1973 jury does not fix a sentence but finds only facts. However, under section 190.2 of the Penal Code, the imposition of the death penalty is mandatory once the special circumstances have been found to be true. Even though a juror may not know that his verdict has that conclusive force, it is naive to argue that the juror does not know, from the very fact of a separate hearing after a verdict of guilty, that the verdict on special circumstances will affect the sentence to be imposed by the court and that that sentence may well be one of death. The issue of the death penalty has been a widely publicized matter in California for many years; it is not improper for a trial court to exclude from a jury those persons whose beliefs in the wrongfulness of the death penalty would cause them to return a special circumstances verdict that would avoid the possibility of such a sentence.

(2) The second contention was considered by the California Supreme Court in *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], where the court said, at page 753: "Defendant contends that he was denied due process in the guilt phase because certain prospective jurors who expressed an inability to impose the death penalty, and were excused for cause, nevertheless either (1) stated that their views *would not* prevent them from rendering a fair and impartial decision on the issue of guilt, or (2) stated that their views *might* prevent them from rendering a fair and impartial decision on the issue of guilt, or (3) were not asked whether their views would have such an effect. These prospective jurors, it is urged, should have been allowed to sit on the jury for the trial of issues of guilt. This argument, however, was answered by us in *People* v. *Washington* (1969) 71 Cal.2d 1061, at pages 1087-1090 [80 Cal.Rptr. 567, 458 P.2d 479]. The seating of persons who, although unable to impose the death penalty might have been able to render a fair and impartial decision on the issue of guilt, would have resulted in separate juries for guilt and penalty issues whenever the trial of the latter issue was required under sections 190 and 190.1 of the Penal Code. However, the Legislature in section 190.1 expressed a clear preference that both guilt and penalty issues be tried by the same jury, and we have repeatedly pointed out that insistence upon a single jury pursuant to this preference did not deprive defendant of his right to an impartial jury. [Citations.]" (Fns. omitted; italics in original.)

It is to be noted that the 1973 version of Penal Code section 190.1 contained the same provision as did the pre-1973 version with respect to a preference for one jury handling the issues of both punishment and guilt in murder cases. The *Thornton* expression that a single jury for both the

guilt trial and the punishment trial does not violate any constitutional rights of defendant refers to the pre-1973 version of Penal Code section 190.1, which provides, in relevant part: " 'If the defendant was convicted by a jury, the trier of fact [on the issue of penalty] shall be the same jury unless, for good cause shown, the court discharges that jury in which case a new jury shall be drawn to determine the issue of penalty. . . .' " (See *Thornton, supra,* 11 Cal.3d 738, 753, fn. 10.) The pertinent provisions of the 1973 version of Penal Code section 190.1 provides: "If the defendant was convicted by a jury, the trier of fact shall be the same jury unless, for good cause shown, the court discharges that jury, in which case a new jury shall be drawn to determine *the issue of whether or not any of the special circumstances charged are true or not true.*" (Italics added.) (See Stats. 1973, ch. 719, § 4, p. 1298.)

Defendant argues that a series of studies have reached the conclusion that the exclusion, at the guilt stage, of jurors opposed to the death penalty, results in a jury not representative of the community as a whole and in a jury overly prone to convict. Similar arguments have been made to our Supreme Court and have been rejected by it. (See *People* v. *Rhinehart* (1973) 9 Cal.3d 139 [107 Cal.Rptr. 34, 507 P.2d 642]; *People* v. *Murphy* (1972) 8 Cal.3d 349 [105 Cal.Rptr. 138, 503 P.2d 594].) If the use of separate juries is to be mandated, it is for the Supreme Court and not an intermediate appellate court to adopt such a rule.

## II

█ Defendant was first arrested on a charge of being drunk in a public place. He was taken to a hospital for medical treatment, since he was bleeding at that time. After testifying that defendant had refused to sign a consent for medical treatment, Officer Markussen was permitted to testify, over appropriate objection by defendant, that defendant started kicking and swinging and succeeded in kicking the officer in the chest.

The People here seek to justify the receipt of that evidence by reliance on *People* v. *Terry* (1970) 2 Cal.3d 362 [85 Cal.Rptr. 409, 466 P.2d 691], and *People* v. *James* (1976) 56 Cal.App.3d 876 [128 Cal.Rptr. 733], which hold that consciousness of guilt may be shown by evidence of defendant's flight, evasion of apprehension or other similar conduct. We agree with defendant that the evidence in question did not fall within the scope of those cases. However, the incident had so little probative force that we conclude that, in light of the whole record, it was not prejudicial beyond any reasonable doubt.

## III

As we have pointed out above, the result of the jury finding on the special circumstances was the imposition by the trial court of the death penalty. The provision under which that sentence was imposed has since been held to be unconstitutional in *Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420 [134 Cal.Rptr. 650, 556 P.2d 1101]. As we understand him, the Attorney General argues that the 1977 revision of the death penalty statute, contained in chapter 316 of the Laws of 1977, cured the constitutional objections relied on in *Rockwell* and that the case should be remanded for a new special circumstances hearing. That contention was made and rejected in *People* v. *Harvey* (1977) 76 Cal.App.3d 441 [142 Cal.Rptr. 887]; we follow that decision.

The judgment is modified to provide for imprisonment for life on count I; the sentences on the other two counts are merged into that sentence (Pen. Code, § 669); otherwise the judgment is affirmed.

Files, P. J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

The majority finds no error sufficient to justify a reversal of defendant's conviction. I do.

## I

*The Exclusion, Prior to the Guilt Phase of
Defendant's Trial, of Prospective Jurors Who
Expressed Conscientious Scruples Against Capital
Punishment to the Extent That They Could Not
Vote for the Death Penalty Irrespective of
the Evidence, Constituted a Denial of Defendant's
Constitutional Rights to Due Process of
Law, Equal Protection of the Laws, and a
Fair and Impartial Trial by Jury*

In selecting jurors for the guilt phase of defendant's trial, the trial court conducted a voir dire examination of prospective jurors regarding their views on the death penalty. Six prospective jurors were excused for cause

and one prospective alternate juror was excused for cause as a result of the court's voir dire examination.

It is defendant's contention that since, under the provisions of section 190.1 of the Penal Code in existence at the time of defendant's trial, the jury was not required or authorized to recommend or impose the death penalty for murder as contrasted with life imprisonment, but only to find whether the special-circumstances allegations were true or not, there was no legal justification for permitting a voir dire examination of prospective jurors to determine their attitude toward the death penalty.

Defendant points out that such inquiry (1) led to the exclusion of prospective jurors who asserted that their conscientious scruples against, or attitude toward, the death penalty would preclude a fair consideration of defendant's guilt or innocence, or of whether the special circumstances were true or not; and (2) led to the leaving on the jury of those persons who possessed conscientious scruples against the death penalty but who indicated that they would still be able to determine the issues of guilt or special circumstances, based upon the evidence. It is the contention of defendant that such inquiry, therefore, created a guilt-prone jury and, hence, denied to defendant his constitutional due process and equal protection rights and his right to a fair and impartial jury made up of a broad cross-section of the community.

The majority rejects this contention. I consider the contention meritorious.

I begin with a consideration of principles set forth in *Witherspoon* v. *Illinois* (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770]. *Witherspoon* declared that ". . . a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." (*Id.,* at pp. 522-523 [20 L.Ed.2d at pp. 784-785]; fns. omitted.)

The essence of *Witherspoon* is that prospective jurors in a death penalty case may not be excluded from serving on the jury simply because they voice general objections to the death penalty, or simply express conscientious or religious scruples against its infliction, but do not state unambiguously that they would automatically vote against the imposition of

capital punishment no matter what the evidence at trial might reveal. These *Witherspoon* principles were affirmed in *Boulden* v. *Holman* (1969) 394 U.S. 478 [22 L.Ed.2d 433, 89 S.Ct. 1138], and *Maxwell* v. *Bishop* (1970) 398 U.S. 262 [26 L.Ed.2d 221, 90 S.Ct. 1578].

It is the thesis of defendant that *Witherspoon* left open the question of whether, in a capital punishment case, the exclusion for cause from a jury selected to determine guilt of persons who assert that their views against the death penalty are such that they would automatically vote against the imposition of the death penalty under any and all circumstances or would be prevented from making an impartial decision as to the defendant's guilt, produces a guilt-prone jury which denies to defendant due process of law, equal protection of the law and a right to a fair trial by a jury chosen at random from a cross-section of the community.

Defendant urges that the procedure of questioning prospective jurors relative to their attitudes toward the death penalty and excusing, for cause, those who cannot put aside their attitudes in assessing the evidence as to guilt or innocence, denies to a defendant the right to a jury chosen from a randomly selected cross-section of the community in violation of due process, equal protection and fair jury-trial constitutional rights.

Defendant argues that, under the provisions of Penal Code sections 190 and 190.1, as they existed at the time of his trial, the questioning of prospective jurors on voir dire examination regarding their views as to the death penalty constituted a totally irrelevant consideration on the issue of jury qualifications. Defendant points out that the jury in the case at bench was *only* required to determine *first,* his guilt or innocence of the offense of murder, and *second,* the truth or falsity of the allegations with respect to special circumstances.

Prior to 1973, Penal Code section 190.1 provided that the trier of fact, if it were the jury, would *fix the penalty* of death or life imprisonment based upon the evidence presented such as the circumstances surrounding the crime, the defendant's background and history, and of any facts in aggravation or mitigation of the penalty. In 1972, Penal Code section 190.1 was declared by *People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], to be violative of article I, section 6 of the California Constitution, which proscribes cruel or unusual punishments.

However, in 1973, the pre-1973 provisions of Penal Code section 190.1 were repealed and a new 190.1 section was added to the Penal Code.

Under the 1973 version of section 190.1, the penalty of death was to be imposed "only upon the finding of the truth of the special circumstances enumerated in Section 190.2 [of the Penal Code]." Under this 1973 version of Penal Code section 190.1, "[t]he determination of the truth of any or all of the special circumstances charged shall be made by the trier of fact on the evidence presented."

It is clear that the function of the jury was changed radically in the 1973 version of Penal Code section 190.1 from what its function had been in the pre-1973 version of Penal Code section 190.1. It is also clear that the *Witherspoon* principles were enunciated by the *Witherspoon* court in light of an Illinois statute that resembled the pre-1973 version of California's Penal Code section 190.1, since the jury in Illinois had the duty and discretion to fix the penalty for murder as either death or life imprisonment.[1]

Under such circumstances, it was essential, therefore, that a prospective juror's attitude toward capital punishment be elicited in order to qualify him to sit on the jury and make a fair determination, based upon the evidence, of defendant's guilt or innocence *and,* in the case of guilt, the appropriate punishment. It is not at all clear, however, how a prospective juror's attitude toward capital punishment has any relevancy whatever under the post-1972 version of Penal Code section 190.1, to determine such juror's qualification to serve in a murder case since the jury was required *only* to determine guilt or innocence of the defendant and the truth or falsity of allegations of special circumstances.

In noncapital cases involving felonies of various kinds, no voir dire inquiry is made of prospective jurors regarding their attitudes toward the penalty or punishment that may be imposed for particular crimes, whether the crime charged be rape, robbery, burglary, or some other felony, and even though the finding of the existence of special circumstances charged in the information results in the court's imposition of a more severe sentence. No valid reason is suggested by the majority, and none appears to me, why prospective jurors should be questioned about their views on *penalty* in a murder case as distinguished from a robbery, rape or burglary case where the truth or falsity of special-circumstances allegations are submitted to the jury for determination.

---

[1]In *Witherspoon,* the court remarked: "For in this case the jury was entrusted with two distinct responsibilities: first, to determine whether the petitioner was innocent or guilty; and second, if guilty, to determine whether his sentence should be imprisonment or death." (*Witherspoon, supra,* 391 U.S. 510, 518 [20 L.Ed.2d 776, 782-783]; fn. omitted.)

The People argue simply that the *Witherspoon* principles have been followed in subsequent cases and that the California Supreme Court has repeatedly held that excusing a prospective juror for cause is proper if he states that he would· *not* vote for the death penalty under any circumstances, and that even the improper exclusion of jurors because of scruples against the death penalty does not, in and of itself, create an unfair jury with respect to the guilt phase of a defendant's trial.

This argument has validity only upon an assumption that jurors would automatically know that in a murder case where there are allegations of special circumstances, the penalty that the *court* will impose will be death or life imprisonment, dependent upon whether the allegations of special circumstances are found by the jury to be true or not. But this is *sheer speculation.*

The majority accepts the premise that prospective jurors *know* that the allegations of special circumstances means a request for the death penalty, and asserts that it is naive to argue to the contrary. But in adopting such a premise, the majority of necessity is taking judicial notice of a matter that is simply *not* the subject of judicial notice. The majority's view constitutes a violation of Evidence Code section 450 which provides: "Judicial notice may not be taken of any matter unless authorized or required by law." The question of what prospective jurors know does not fall within any category of matters made the subject of judicial notice by Evidence Code section 451 or 452.

No judge, trial or appellate, is free to take judicial notice of a matter simply because he *personally believes* it is not reasonably subject to dispute. To be the proper subject of judicial notice, a matter must fall within a category that is *sanctioned* or *required* for judicial notice by either a statutory provision or a judicial decision. This is the essential meaning of Evidence Code section 450. In the case at bench, however, the majority ignores this principle of law by substituting the majority's *personal beliefs* for the objective requirements of Evidence Code section 450.

In other than murder cases, it is usual for the court to give CALJIC instruction No. 17.42, which provides: "In your deliberations the subject of penalty or punishment is not to be discussed or considered by you. That is a matter which must not in any way affect your verdict." In *People v. Shannon* (1956) 147 Cal.App.2d 300 [305 P.2d 101], the giving of CALJIC instruction No. 17.42 in a burglary case was objected to by the defendant on the ground that it suggested guilt of the defendant. In

rejecting such suggestion, the court stated: "On the contrary, it directs the jury not to involve the question of guilt with a consideration of the penalty. That is the law. Without that advice a jury may permit their consideration of guilt to be deflected by a dread of seeing the accused suffer the statutory punishment." (*Id.,* at p. 306.)

And in the case at bench, in the special-circumstances phase of the trial, after defendant's guilt had been determined, a similar instruction was given, to wit, CALJIC instruction No. 8.86.5. This instruction reads: "In your deliberations the subject of penalty or punishment is not to be discussed or considered by you. That is a matter which must not in any way affect your finding as to the special circumstances charged in this case."

It is true that, in prior cases, the California Supreme Court, in the wake of *Witherspoon,* has rejected the contention that the exclusion, during the guilt trial of a death penalty murder case, of prospective jurors who are unwilling to impose the death penalty, made the jury a guilt-prone jury. In *People* v. *Murphy* (1972) 8 Cal.3d 349, 368 [105 Cal.Rptr. 138, 503 P.2d 594], the court stated: "He requests an evidentiary hearing to develop the argument that 'empirical evidence is now available [citing Jurow, *New Data on the Effect of a "Death Qualified" Jury on the Guilt Determination Process* (1971) 84 Harv.L.Rev. 567] indicating that a jury from which persons who would never vote to impose the death penalty are excluded is a "hanging jury" with regard to determination of guilt [i.e., more likely to convict].' Similar requests were made in *People* v. *Sirhan* (1972) 7 Cal.3d 710, 747-749 [102 Cal.Rptr. 385, 497 P.2d 1121], *People* v. *Robles, supra,* 2 Cal.3d 205, 219 [85 Cal.Rptr. 166, 466 P.2d 710], *In re Arguello* (1969) 71 Cal.2d 13, 16 [76 Cal.Rptr. 633, 452 P.2d 921], and *In re Anderson* (1968) 69 Cal.2d 613, 620-621 [73 Cal.Rptr. 21, 447 P.2d 117], and were rejected for various reasons. We must again reject the contention not only because of our decision in *People* v. *Anderson, supra,* 6 Cal.3d 628 but because we are not willing to accept as decisive the conclusion of the Jurow study that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. Defendant simply fails to establish the validity of such a claim." A year after *Murphy,* the California Supreme Court spoke in similar fashion in *People* v. *Rhinehart* (1973) 9 Cal.3d 139, 155 [107 Cal.Rptr. 34, 507 P.2d 642].

But even though defendant has not established that the jury selection procedures in the case at bench resulted in a guilt-prone jury, it is my

view that those procedures did result in excluding from service on the jury a large and identifiable segment of the community, which constitutes error. In *Peters* v. *Kiff* (1972) 407 U.S. 493, 503-504 [33 L.Ed.2d 83, 94, 92 S.Ct. 2163], the United States Supreme Court declared: "When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented." (Fn. omitted.)

In *Adams* v. *Superior Court* (1974) 12 Cal.3d 55, 59 [115 Cal.Rptr. 247, 524 P.2d 375], the California high court points out that the United States Supreme Court, in *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893], ". . . explained that the jury impartiality provisions of the Sixth Amendment to the federal Constitution require the jury selection process to provide a 'fair possibility for obtaining a representative cross-section of the community.' The process of selection must be structured to insure that cognizable classes of citizens are not systematically excluded from jury service." Although *Adams* points out that selection of a jury from a cross-section of the community is intended to insure that there shall be no "systematic and intentional exclusion of economic, sexual, social, religious, racial, political, or geographical groups" (*Adams, supra,* 12 Cal.3d 55, 60), I am satisfied that *Adams* did *not* intend to make this group listing as all-inclusive.

The *Adams* case interprets *Witherspoon* as holding that "before exclusion may be held improper, there must be a common thread running through the excluded group—a basic similarity of attitudes, ideas or experience among its members so that the exclusion prevents juries from reflecting a cross-section of the community." (*Id.,* at p. 60.)

In view of the fact that the provisions of Penal Code sections 190 and 190.1, as they existed at the time of defendant's trial, made a juror's attitude regarding the death penalty an *irrelevant* consideration, the exclusion from the jury of persons who had a fixed and unalterable aversion to the death penalty amounted to an arbitrary exclusion of an otherwise identifiable, ascertainable and eligible group of citizens. The excluded group certainly meets the *Witherspoon-Adams* test of having "a common thread running through the excluded group—a basic similarity

of attitudes, ideas or experience among its members so that the exclusion prevents juries from reflecting a cross-section of the community." (*Adams, supra,* 12 Cal.3d 55, 60.)

Since the jury in defendant's case had no responsibility in recommending punishment upon a finding of guilt, and no legitimate interest in ascertaining what the appropriate punishment should be, there is a failure of the People to establish that the state had any legitimate purpose in excusing for cause, at the guilt-phase trial or the special-circumstances phase, members of the class indicated. (*Taylor* v. *Louisiana* (1975) 419 U.S. 522 [42 L.Ed.2d 690, 95 S.Ct. 692]; *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893]; *People* v. *Jones* (1973) 9 Cal.3d 546 [108 Cal.Rptr. 345, 510 P.2d 705].)

I next consider the question of the effect of the error involved in the jury selection procedure employed in the case at bench. The error is one of constitutional dimension. In determining whether the error is prejudicial and reversible, consideration must be given to whether the prejudicial-per-se rule of error applies to mandate a reversal of defendant's conviction, irrespective of the evidence of defendant's guilt, or, whether the error may be deemed harmless through application of the harmless error standard set forth in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].

The *Chapman* court recognized that ". . . there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, . . ." (*Chapman, supra,* 386 U.S. 18, 23 [17 L.Ed.2d 705, 710].) My analysis of the problem indicates that the prejudicial-per-se rule of error is applicable in the instant case rather than the harmless-constitutional-error rule set forth in *Chapman.* In *Taylor* v. *Louisiana* (1975) 419 U.S. 522 [42 L.Ed.2d 690, 95 S.Ct. 692], dealing with the right of a male defendant to be tried by a jury from which women were not excluded, the court described the importance and significance of the jury-trial-fair-cross-section requirement in this language: "We accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation. The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge. . . . Restricting jury service to only special

groups or excluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial." (*Taylor, supra,* 419 U.S. 522, 530 [42 L.Ed.2d 690, 698].)

That there is no necessity for a defendant to show actual prejudice from the improper jury exclusion procedure is amply demonstrated by the view set forth in *Peters* v. *Kiff* (1972) 407 U.S. 493, 502 [33 L.Ed.2d 83, 93, 92 S.Ct. 2163], in which the court stated that "even if there is no showing of actual bias in the tribunal, this Court has held that due process is denied by circumstances that create the *likelihood* or the *appearance* of bias." (Italics added.) The *Peters* court added: "But the exclusion from jury service of a substantial and identifiable class of citizens has a potential impact that is too subtle and too pervasive to admit of confinement to particular issues or particular cases." (*Peters, supra,* 407 U.S. 493, 503 [33 L.Ed.2d 83, 94].)

In light of the principles set forth in *Taylor* and *Peters,* it is my view that the error involved in the jury selection procedure employed in the case at bench constitutes prejudicial error per se, because of the "likelihood or the appearance of bias" created thereby, and mandates a reversal of defendant's judgment of conviction.

## II

*Evidence That Defendant Assaulted the*
*Police Officer Who Arrested Him First*
*on a Minor Charge Is Not Admissible to*
*Show Consciousness of Guilt*

The majority concedes that it was error for the trial court to admit evidence that defendant kicked the arresting officer in the chest upon the defendant's arrest for being drunk in a public place. But the majority concludes that the incident was of such little probative force that it was not prejudicial. I disagree.

The admitted evidence had a potential for great prejudice to defendant because of its possible misuse by the jury as character trait or propensity evidence, made inadmissible by Evidence Code section 1101, subdivision (a). As indicated in *People* v. *Thornton* (1974) 11 Cal.3d 738, 756 [114 Cal.Rptr. 467, 523 P.2d 267], where other-crimes evidence was offered on the issue of identity, the court remarked that "because the prejudicial effect of such evidence is always manifest, the court's discretion should be

exercised in favor of exclusion if the inference of identity is weak." "Although Evidence Code section 352 gives the trial judge wide discretion, it is a discretion that must be exercised with discerning care in connection with the question of the admissibility of other-crimes evidence offered against a defendant, because of the inherently prejudicial nature of such evidence as constituting character trait and propensity evidence." *(People* v. *Gibson* (1976) 56 Cal.App.3d 119, 131 [128 Cal.Rptr. 302].)

Because of the prejudicial errors involved in the jury-selection procedure employed in the case at bench and in the receipt into evidence of character-trait evidence, I would reverse the judgment of conviction and remand the case for a new trial. Defendant deserves a new trial, so that he can be tried on "relevant, nonprejudicial evidence" *(People* v. *Guerrero* (1976) 16 Cal.3d 719, 730 [129 Cal.Rptr. 166, 548 P.2d 366]), and before a validly selected jury.

A petition for a rehearing was denied June 20, 1978. Jefferson, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied July 27, 1978.