Filed 4/30/14  P. v. Mercado CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058612 |
| v. | (Super.Ct.No. SWF1200673) |
| MANUEL ROJAS MERCADO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Albert J. Wojcik, Judge.  Affirmed.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Manuel Rojas Mercado appeals from a judgment of conviction for possession of a controlled substance with intent to sell. (Health & Saf. Code, § 11378.) He was sentenced to a total of 12 years in state prison.

On this appeal, defendant argues that the trial court erred in admitting evidence about previous instances in which he was found in possession of methamphetamine under circumstances suggesting an intent to sell, and also that the trial court erred in denying his motion to strike a prior "strike" conviction under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-532. We find no error and affirm the judgment.

STATEMENT OF FACTS

Corporal David Schell of the Riverside Sheriff's Department knocked on the door of a motel room. Eventually defendant answered. Corporal Schell asked him if he had anything illegal in the room, and defendant, with admirable (or resigned) candor, responded, "I'm not going to lie, I have some dope and a pipe." He further pointed out where the drugs were, and Corporal Schell found 25.9 grams of methamphetamine inside a camera case on a table by the television. After searching the motel room and defendant's vehicle, Corporal Schell also found about 200 small plastic baggies and a glass smoking pipe with residue inside, four cell phones, and $84 in currency. It was also established that the room had been rented in defendant's name the day before.[1]

The only real point of contention was whether the methamphetamine had been possessed for the purpose of sale rather than for personal use. Corporal Schell testified

---

[1] The motel clerk could not, however, identify defendant.

2

that in his opinion the methamphetamine was to be sold, giving the opinion that the quantity was far more than a mere user would possess at any given time. A police expert also testified that the amount indicated possession for sale as the total cost to a user would be between $650 and $850; furthermore, that the possession of the baggies indicated an intent to package and sell. Finally, the possession of multiple cell phones was an indicator of sales.

The defense, on the other hand, stressed that no set of scales was found in the motel room, nor were there any "cutting devices, anything to separate substances." The defense also established that Corporal Schell had never determined whether the four cell phones were operative.

It is in this context that the evidentiary issue arose. The trial court allowed the People to introduce evidence that on two separate occasions in 2005, defendant had been the subject of traffic stops while in possession of methamphetamine. On the first occasion he was holding 15.8 grams of methamphetamine concealed in his socks and also had three operative and two inoperative cell phones in his possession, while a search of defendant's bedroom revealed a digital scale and assorted Ziploc packaging. On that occasion defendant was carrying only $94. On the second occasion a few months later, defendant was carrying two working cell phones and was carrying over $1,800 in cash, although he only possessed 2.7 grams of methamphetamine. The witness who described the stops testified that in both instances, in his opinion, the methamphetamine was possessed for sale.

3

At sentencing, defendant made an oral motion to strike a "strike prior." The information before the court was that defendant had been convicted of first degree burglary in 2007[2] (Pen. Code, § 459) and possession of a controlled substance for sale in 2005 and 2006. The probation officer's report also reflected a 2005 misdemeanor conviction for disobeying a court order (Pen. Code, § 166, subd. (a)(4)) and misdemeanor convictions in 2006 for driving without a license and with a false identification card. (Veh. Code, § 14601.1, subd. (a); Pen. Code, § 529.5, subd. (c).) After being released on parole after his second drug conviction, defendant in 2011 was convicted of misdemeanor petty theft and failure to appear. (Pen. Code, §§ 490.5, 1214.1, subd. (a).) Later in the same year he suffered a misdemeanor conviction for possession of a controlled substance and failure to appear. (Health & Saf. Code, § 11377, subd. (a); Pen. Code, § 1214.1, subd. (a).) Still later in that year he was convicted of misdemeanor failing to stop at the scene of a traffic accident and, yet again, failure to appear. (Veh. Code, § 20001, subd. (a); Pen. Code, § 1214.1, subd. (a).) At the time the probation report was prepared, two more traffic matters were pending.

Defendant's mother addressed the court and informed it that defendant had suffered an accident and since then "he has never been the same." She asked that he be placed in a treatment program for drug abuse. Defendant's former sister-in-law, a Los Angeles County probation officer, also told the court that defendant had been a "great

---

[2] Defendant admitted this conviction as well as the two drug convictions described.

family [] guy" until his accident, which resulted in several months of hospitalization and rehabilitation. She indicated that defendant had never received treatment for his drug issues and that he had a young daughter who needed him.

Defendant's younger sister added that after defendant had been incarcerated for two years, he remained "clean" for a couple of months, but then returned to using drugs; she argued that prison did not rehabilitate him and that he needed treatment. A cousin and defendant's ex-wife also told the court that defendant had been a responsible, hard-working man before his 2004 accident. The former wife described a serious head injury and related the warnings by defendant's doctor that he had suffered possibly permanent frontal lobe damage. She expressed the view that defendant began using drugs to cope with his disabilities and changed circumstances. Finally, defendant sought leniency from the court, essentially repeating what his family members had said, blaming his accident for his drug use and indicating that he had never been offered rehabilitation.

In denying the motion, the court stated that it could not find that defendant fell outside the scheme or scope of the "Three Strikes" law and rejected his excuses, noting that there had been no indication that defendant had ever sought help or attempted to enter a rehabilitation program on his own.

## DISCUSSION

### A.

Defendant argues both that the evidence of his prior drug possessions was simply "bad character" evidence and not admissible under Evidence Code section 1101,

5

subdivision (b), and that, if it was admissible, it should have been excluded as more prejudicial than probative. (Evid. Code, § 352.) We review for abuse of discretion. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1003.)

Evidence Code section 1101, subdivision (a), prohibits the introduction of "evidence of a person's character . . . evidence of specific instances of his or her conduct" if offered to prove the defendant's conduct on a particular occasion. However, subdivision (b) allows "evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact such as motive, opportunity, [or] intent . . . ." As defendant argues, such evidence is to some extent inherently prejudicial and the decision whether to admit it must be made with care even when it falls within the permissive scope of subdivision (b). (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.)

Admissibility under Evidence Code section 1101, subdivision (b), is contingent upon similarity between the uncharged conduct and that involved in the case at bar. However, as between identity, common plan, and intent, the *least* amount of similarity is necessary when, as here, the prior conduct is introduced to prove intent in the current case. (*People v. Hovarter*, *supra,* 44 Cal.4th at pp. 1002-1003; *People v. Cortes* (2011) 192 Cal.App.4th 873, 916.) With this in mind, the distinctions drawn by defendant between the previous conduct and our case are not persuasive. The fact that defendant was in a motel room rather than a car is insignificant, especially when he had evidently driven to the motel in a vehicle. A fortiori the distinction that in the first two instances defendant's vehicle did not have license plates, while in this case it did. Defendant

6

points out that in one of the prior instances he was transporting the drug in his socks, while here it was in a camera bag; again, these are trivial distinctions. The essential similarity is that defendant possessed a substantial amount of methamphetamine along with one or more indicia that the drug was possessed for the purpose of sale.[3] In this context the precise physical and situational circumstances surrounding the possession are not crucial. What matters is whether there is sufficient similarity to support the inference that the defendant harbored the same intent here as the evidence suggests he did in the previous instances. (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 402; *People v. Cortes*, *supra*, 192 Cal.App. 4th at p. 916.) We find that there is.

Defendant then contends that the evidence, if admissible, was unduly prejudicial. Of course any evidence that is damaging may be said to be "prejudicial" in one sense, but that is not the sense in which the statute uses the word "prejudice." (*People v. Lopez* (2013) 56 Cal.4th 1028, 1059.) What the judicious application of the statute is designed to avoid is the introduction of evidence that uniquely tends to invoke an emotional bias against the defendant and has little effect on the merits of the issues. (*Ibid.*) In this case, the evidence of prior offenses was not more inflammatory than that introduced

---

[3] Defendant also argues that he had a scale in one of the previous instances, but not in this one. But if every indicator of intended sales were present in this case, there would have been no need to introduce the evidence of prior conduct, and indeed a much stronger argument could have been made for exclusion under Evidence Code section 352 as cumulative or time-consuming. The whole point of introducing "prior conduct" evidence is to fill in *lacunae* in the current case. It is axiomatic that proof of other crimes is appropriate where there is no doubt that the defendant committed the act currently charged, but the evidence of intent is ambiguous. (*People v. Guerrero* (1976) 16 Cal.3d 719, 726.)

with respect to the charged offense. (See *People v. Cortes*, *supra,* 192 Cal.App. 4th at p. 916.) All three matters involved defendant's peaceable possession of a significant, but not staggering, amount of contraband. On the other hand, the fact that defendant had possessed similar amounts of methamphetamine in the past with significant indicia of intent to sell was clearly probative to this case. The trial court properly exercised its discretion under Evidence Code section 352.

B.

Although the trial court has discretion to strike a "strike" prior that has been pleaded and proved as required by law, this discretion may be exercised in the defendant's favor only in extraordinary circumstances, which justify a finding that he falls outside the spirit of the law. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) In this case, defendant made a viable showing that his problems with drugs and the law stemmed from the consequences of his injury. However, as the People pointed out at trial, defendant was absolutely ineligible for probation. (Pen. Code, § 667, subd. (c)(2).) There was therefore, if unfortunately, no way in which the trial court could order that he receive rehabilitation treatment outside of prison. As the court observed, defendant had made no efforts to self-treat his drug use, for example by turning to Alcoholics Anonymous or Narcotics Anonymous. Absent such a commitment by defendant and given his record of consistent lawbreaking connected to drugs over the last several years, the possible genesis of his criminal activities did not take him outside the spirit of the Three Strikes law.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST

Acting P. J.

We concur:


KING

          J.


MILLER

          J.


9