Filed 7/10/14  P. v. Blount CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C072742 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F07200) |
| v. | |
| REGINALD BLOUNT, | |
| Defendant and Appellant. | |

A jury found defendant Reginald Blount guilty of assault with a deadly weapon and misdemeanor vandalism.  The jury sustained two prior conviction allegations and the trial court found the priors were serious felonies and strikes.  The trial court sentenced defendant to 35 years to life.  On appeal, defendant contends the trial court erroneously admitted prior uncharged misconduct evidence and he is entitled to additional conduct credits.  We shall affirm.

FACTS

On October 18, 2011, Avery Blount (Blount) was living with defendant (his father), his son, mother, and brother. When he came home that day, there was an outdoor barbecue for his birthday. Among the attendees were his cousins David Beckhorn, Richard Harris, and Michael Plunkett.

Defendant arrived at the party later in the evening. He was angry and drunk and started arguing with a neighbor named Chin. Defendant yelled at Chin and threatened to "beat his ass." He temporarily left the party; when he returned, defendant continued to yell profanity at Chin. Blount told defendant to stop swearing, but defendant ignored him. Defendant got upset with Blount for taking sides and not allowing him to fight Chin.

Defendant went into Blount's house several times, returning outside "yelling and cursing and throwing a bike in the middle of the street." Defendant also threatened Harris and swore at him. Blount and his cousins went in his house with defendant and tried to calm him down, but were unsuccessful. After Blount and his cousins walked outside and said, "we quit," defendant came outside, ready to fight Blount.

Defendant told Blount he owed him for the last time.[1] He put up his hands like he was going to fight Blount and then lunged at him. Beckhorn tried to stop the attack by

---

[1] Testifying, Blount explained this was a reference to a fight he had with defendant in 2007 when Blount was 16 or 17 and Blount's mother had kicked defendant out of the home. After being thrown out, defendant kicked through a window, banged on a door, and entered the home. Defendant took Blount's mother into the living room, argued with her, said he was going to hurt her, and then lunged at her. Blount took a bread knife from the dishwasher and hit defendant in the head. Defendant threw several punches at Blount, striking Blount about six times, and also threw a Crock-Pot and carpet cleaner at him. The confrontation ended when the police arrived. Defendant was convicted of criminal threats as a result of the incident.

grabbing defendant's hands; defendant responded by choking Beckhorn. The two fell and Beckhorn struck his head on a television stand.

After Blount pulled defendant off Beckhorn, defendant pushed out a window and unsuccessfully tried to jump through it. Plunkett said he was calling 911, which further enraged defendant. As Blount, Harris, and Plunkett started to leave through the front door, defendant grabbed a golf club and hit Beckhorn. Beckhorn grabbed another golf club and tried to deflect the attack. Defendant then chased them out of the house as he was swinging the golf club. Defendant ran into the garage and smashed out car windshields, including the one in Beckhorn's car.

Neighbor Deanne Teel called 911 at 9:32 p.m. She reported an argument, two loud cracks, and a man wielding a weapon with several other people trying to calm him down. A deputy arrived and encountered defendant, who was pacing, waving his arms around, and smelled of alcohol. Beckhorn was holding a bloody rag to his head. Defendant was arrested after a brief investigation.

Defendant told a deputy he was angry at a neighbor and challenged him to a fight. The neighbor refused and defendant went home. Blount and his cousins then confronted defendant about his behavior. Beckhorn pushed him several times, so defendant "took [him] down." Blount and Beckhorn started punching defendant and pushed him into a window. Defendant first said no one had a golf club, but later claimed Beckhorn hit him with a golf club. He denied having a golf club or smashing the windshield to Beckhorn's car, claiming he only defended himself from their attacks.

## DISCUSSION

### I

### *Uncharged Misconduct Evidence*

Defendant contends the trial court erroneously admitted defendant's 2007 incident with Blount and Blount's mother as prior uncharged misconduct evidence. We agree but find the error to be harmless.

3

The prosecution moved in limine to admit the prior incident to show motive and rebut self-defense. Defendant objected, claiming any inference of motive was speculative and the five-year span between the charged and uncharged offenses meant the prior incident was not relevant to any claim of self-defense. At the in limine hearing, defendant also claimed the prior incident was inadmissible pursuant to Evidence Code section 352.

The trial court ruled that the 2007 incident was admissible to show motive provided the prosecution establishes a proper foundation for the evidence. After Blount testified that defendant told him, "he owes me for the last time," the prosecution elicited Blount's testimony describing the 2007 incident.[2] At the next break, the prosecutor asked the court for a ruling on his request to admit the fact of defendant's conviction for criminal threats resulting from the 2007 incident. Defendant raised an Evidence Code section 352 objection. The trial court initially deferred ruling on the motion and later admitted the prior conviction over defendant's objection.

California law prohibits the introduction of evidence of uncharged acts to prove a defendant's disposition or propensity to commit the crime charged. (Evid. Code, § 1101, subd. (a); *People v. Guerrero* (1976) 16 Cal.3d 719, 724.) However, "[n]othing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive . . .) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).)

"To be relevant, an uncharged offense must tend logically, naturally and by reasonable inference to prove the issue(s) on which it is offered." (*People v. Robbins* (1988) 45 Cal.3d 867, 879.) The trial court may admit such evidence in its discretion after weighing its probative value against its prejudicial effect. (*People v. Daniels* (1991)

---

**2**      See footnote 1, *ante*.

4

52 Cal.3d 815, 856.)  Consequently, a trial court's ruling admitting prior instances of misconduct is reviewed for abuse of discretion.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.)

Defendant claims the nexus between defendant's comment to Blount that he owed him for the "last time" and the 2007 incident was speculative.  According to defendant, " '[l]ast time' could mean a myriad of incidents over the day, let alone the preceding five years."  He argues that Blount's interpretation of defendant's statement is irrelevant, as it reflects Blount's state of mind rather than defendant's.  Defendant further argues that the prior incident was not relevant, as the prosecutor argued to the jury that defendant was " 'spoiling for a fight' with anyone," and did not include the prior incident "when describing his theory of [defendant]'s motive on the day of the incident."

The admissibility of other crimes evidence to prove motive depends on three principal factors:  " '(1) the *materiality* of the fact sought to be proved or disproved; (2) the *tendency* of the uncharged crime to prove or disprove the material fact; and (3) the existence of any *rule* or *policy* requiring the exclusion of relevant evidence.' "  (*People v. Robbins, supra,* 45 Cal.3d at p. 879.)

As the prosecutor argued at trial, defendant was spoiling to fight that day.  Defendant's initial challenge to fight Chin, his threats to Harris, his attack on his son Blount, and his eventual assault against Beckhorn shows that he was willing to fight *anyone* that day.  In this context, defendant's motive to attack Blount is not material to prove the charged offenses, the assault against Beckhorn, and the vandalism on his vehicle.  Since the prior uncharged misconduct was not even marginally relevant to the charge at issue, the trial court erred in admitting it.

Erroneously admitting evidence of prior uncharged misconduct is not prejudicial per se.  We must determine whether the error was harmless under the standard of *People v. Watson* (1956) 46 Cal.2d 818 and *People v. Carter* (2005) 36 Cal.4th 1114, 1151, 1152.

The evidence of defendant's guilt was overwhelming. Multiple eyewitnesses gave essentially consistent testimony painting defendant as someone ready to fight anyone. He eventually attacked Beckhorn with a golf club and then damaged Beckhorn's car with the same golf club. These accounts were corroborated by the deputy's testimony that Beckhorn was holding a bloody rag to his head and that defendant was agitated and intoxicated. The neighbor's 911 call reporting an argument, two loud cracks, and a man wielding a weapon with several other people trying to calm him down is further confirmation of the eyewitness accounts of defendant's felonious assault.

In light of the compelling evidence of guilt, we conclude it is not reasonably probable defendant would have received a more favorable result at trial if the prior uncharged misconduct had not been admitted and the error was therefore harmless.

## II

### Credits

Defendant contends the trial court erroneously limited his presentence conduct credits to 15 percent of time served. The People concede the point.

The trial court initially awarded defendant 488 days' presentence credits consisting of 424 days of custody credits and 64 days of conduct credits. Following the conclusion of briefing in this appeal, the trial court amended the award of conduct credits to 424 after finding defendant's assault conviction was not a violent felony. This moots defendant's contention.[3]

---

[3] Notwithstanding the trial court's admirable decision to correct the error without prompting, judicial economy is better served if defendant's appellate counsel informs the trial court of the error before filing a brief raising a contention regarding presentence credits.

6

DISPOSITION

The judgment is affirmed.

      ROBIE      , J.

We concur:

      BLEASE      , Acting P. J.

      DUARTE      , J.