Filed 2/27/23  P. v. Morro CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060703 |
| v. | (Super. Ct. No. 20HF1170) |
| VINCENT MICHAEL MORRO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge.  Affirmed.

Arthur Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Vincent Michael Morro appeals from the judgment convicting him of making a criminal threat to a neighbor.  (Pen. Code, § 422, subd. (a).)   Morro was acquitted of a second charge alleging assault with a deadly weapon, i.e., his car.  (Pen. Code, § 245, subd. (a)(1).)  Morro argues his conviction must be reversed because the court abused its discretion when it admitted evidence of a prior incident in which he was alleged to have also used his car as a means of assaulting a different neighbor.

We disagree and affirm the judgment.

Morro's current contention, that the evidence was substantially more prejudicial than probative, and the trial court abused its discretion in concluding otherwise, was not made at trial and is consequently waived.  In any event, we find the argument unpersuasive.

The prosecution's theory was that Morro made the threat he was convicted of making—as well as the charged assault he was acquitted of—because he was angry at the victim whom he believed had reported an earlier incident to police.  Indeed, there was significant evidence that Morro's statements to the victim in connection with the charged crimes were laced with accusations that the victim had "call[ed] the cops" on him and "put [him] in jail."  As such, evidence related to the prior incident Morro was referring to was relevant to establish Morro's motive and intent related to the charged crimes.  We find no error.

**FACTS**

This case arises out of an incident on a residential street in late June 2020. Morro was on his driveway (Morro lived, "off and on" at his mother's home, and the victim had just arrived at his nearby home with his wife and children.  Morro initiated a confrontation by yelling "'[t]here's that faggot.  There's that nigger that fucking put me in jail.'"  The victim and his family worked to unload their car as quickly as possible while Morro threatened and disparaged him—including by saying "'I'm going to fucking

kill you for calling the cops on me and putting me in jail."' The victim did not respond to Morro's statements.

Shortly thereafter, the victim met with a teenager in his courtyard for a pre-arranged job interview. During the interview, Morro continued yelling, and approached the victim's property in an agitated manner. He then repeated things he had said previously, including "I'm gonna kill you."

After concluding the interview, the victim walked the interviewee to his car, out of concern for his safety. At that time, according to the victim, Morro was back in his driveway, sitting in his car and revving the engine. He continued to scream slurs and threats at the victim. The victim claimed Morro then abruptly "gunned his car" and accelerated rapidly out of the driveway coming straight toward him, causing the victim to move onto the grass sidewalk.

As a consequence of that incident, Morro was charged with one count of assault with a deadly weapon, and one count of making a criminal threat.

When the trial commenced, the prosecutor moved, in limine, for permission to admit evidence of a prior incident that occurred on June 9, 2020—approximately two and one-half weeks before the confrontation between Morro and the victim—which had prompted the victim to call the police and led to Morro's arrest. In that earlier incident, Morro allegedly became angry at other neighbors who had asked him to move his car so they could get into their driveway. After yelling profanities at them, Morro allegedly got into his car, drove it to the end of the cul-de-sac, turned around, and then sped down the block, veering toward the neighbors before finally slamming on his brakes. The current victim, who had witnessed the incident, called the police anonymously; Morro was arrested as a consequence.

During the motion in limine hearing, the prosecutor explained he was seeking to admit the evidence to establish motive because Morro's statements in connection with the charged incident referenced his belief that the victim here had called

3

the police, and because that incident established Morro's intent as he was making the alleged criminal threats.

Morro objected to admitting the evidence; his counsel argued it was inadmissible under Evidence Code section 352 because it "will create an undue consumption of time for the court." Counsel pointed out the prosecutor would likely want the two neighbors involved in that earlier incident—described by Morro's counsel as him driving "erratically and nearly hit[ting] the two of them, their kids, and a mailman"—to testify about what happened. When the court clarified that those two neighbors were already expected to testify, and thus it would not seem to require much additional time to have them describe the prior incident, Morro's counsel responded that if they testified "it's going to require me to call the mailman and have the mailman testify as to what happened and what he saw."

The court was not persuaded; the trial judge observed the prosecution's "position is that the defendant's conduct on a contemporaneous prior date that is shortly before the date of violation in question helps explain his conduct on the date of violation for the case in question. That's classic [Evidence Code section] 1101 (b)." The court then granted the motion in limine.

The victim's wife testified at trial. She described how Morro had also confronted her when she went outside to get the mail, testifying that Morro came within five to six feet of her, and said "'I'm going to fucking beat up and kill your husband'" reiterating "'he put me in jail.'"

Morro's brother also testified. He stated he had witnessed the incident and there had been five or six brief "verbal transactions" between Morro and the victim before he "finally told [his] brother to shut up." Morro's brother claimed he said the same thing to the victim, lamenting "'Can't you see I'm trying to get him out of here?'" He testified he did not hear his brother say "I'm going to kill you" or anything similar.

Morro's brother explained by the time he told the victim to stop, Morro "had everything in the car, he did his preliminary checks, we went through the garage, locked the door, he got in the car, and we drove away." The two men departed simultaneously: "I followed him out of the driveway, out of the complex. He turned right, I turned left." Morro's brother testified that departure was the only time Morro drove his car out of the garage, and although the brother watched in his mirror as Morro continued down the street, he never saw Morro drive his car toward the victim. Morro's brother testified he was not trying to minimize Morro's conduct that day, and said he understood why the victim and his wife were upset. He also acknowledged he would not want Morro to be his neighbor.

After the victim reported the incident, an officer responded to the scene; the officer located Morro at a nearby pizza restaurant about three hours later. After the officer informed Morro of his right to remain silent, Morro agreed to talk about the incident. He acknowledged he had tried to provoke the victim into a fight by yelling at him, using racial slurs, and flipping him off several times. But Morro repeatedly denied saying he wanted to kill the victim, denied trying to hit the victim with his car, and claimed no one had been in the street when he left in his car. Morro also admitted to the officer that he had spoken to the victim's wife and had told her he wanted to fight her husband, but he denied telling her he wanted to kill him.

The jury convicted Morro of making a criminal threat, while acquitting him of assault with a deadly weapon. Morro admitted to having a prior strike conviction and the court sentenced him to a total of nine years, comprised of the middle term, doubled pursuant to Penal Code section 667, subdivisions (d) and (e)(1), plus five years for the prior.

**DISCUSSION**

Morro contends that because he was charged with making a criminal threat, the trial in this case "should have been a trial on whether the evidence proved Morro said he wanted to kill [the victim] rather than just beat him up." He claims that when the evidence is limited to the incident at issue "this [is] a close case," while the added evidence detailing the earlier incident made it "a trial on how Morro was a nightmarish neighbor who traumatized the cul de sac with his angry, menacing, curses, slurs, and scary driving." He asserts the trial court abused its discretion by allowing the jury to hear testimony about the details of that prior incident.

Preliminarily, we are not persuaded by Morro's implied assertion that if the jury believed he had threatened only to "beat up" his victim—rather than kill him—that would not have qualified as a criminal threat under Penal Code section 422. The statutory prohibition is not limited to death threats; it also applies to threats of great bodily injury. (Pen. Code, § 422, subd. (a).) Morro cites no authority for the notion that a threat to beat someone up would not qualify as a threat to inflict great bodily injury, and we know of none. Consequently, Morro's suggestion that the jury might have wavered on whether he threatened to kill his victim, as opposed to beat him, does not convince us this was a "close case" on the charge of making a criminal threat.

Next, while evidence of a defendant's prior misconduct is generally inadmissible to prove his or her propensity to commit the charged offense, such evidence is admissible if it is relevant to prove some fact other than propensity, such as motive or intent. (Evid. Code,[1] § 1101, subds. (a), (b).) Admissible evidence is that which "'(a) "tends logically, naturally and by reasonable inference" to prove the issue upon which it is offered; (b) is offered upon an issue which will ultimately prove to be material to the People's case; and (c) is not merely cumulative with respect to other evidence

_____

[1] All subsequent statutory references are to the Evidence Code.

6

which the People may use to prove the same issue.'" (*People v. Guerrero* (1976) 16 Cal.3d 719, 724.)

Even evidence which is admissible under section 1101 may be excluded pursuant to section 352, which requires the trial court to weigh the probative value of the challenged evidence '"against the dangers of prejudice, confusion, and undue time consumption. Unless these dangers "substantially outweigh" probative value, the objection must be overruled.'" (*People v. Hart* (1999) 20 Cal.4th 546, 606.) For purposes of applying section 352, prejudicial evidence is not synonymous with inculpatory evidence; rather, it refers to evidence that "uniquely tends to evoke an emotional bias against the defendant" and has limited relevance to the issues presented in the trial. (*People v. Karis* (1988) 46 Cal.3d 612, 638.)

We review the trial court's decision to admit such evidence, over the defendant's objection using the deferential abuse of discretion standard. (*People v. Foster* (2010) 50 Cal.4th 1301, 1328-1329.) Under that standard, a reversal is not required should we disagree with the trial court's decision. We reverse only if we also conclude the court acted in "'"an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*Ibid.*)

In this case, the victim's contention—and the prosecution's theory of the case—was that Morro's aggression during the incident was motivated by his belief that the victim had reported him to police in connection with the prior incident in which he used his car as a weapon of assault. Evidence related to that incident was therefore potentially admissible to prove Morro's motive and intent under section 1101. Morro does not contend otherwise.

He argues the court nonetheless erred because, while the fact the prior incident occurred may have been relevant and admissible, the *details* of it were unnecessary. He contends those details were unduly prejudicial under section 352. Specifically, Morro argues it was this additional evidence that had "the serious

7

prejudicial effect of making Morro's character as a menace to the neighborhood a potentially dispositive issue in the trial." This contention differs from the "undue consumption of time" objection Morro made at trial.

"On appeal, defendant may argue that the court erred in its ruling. But he may not argue that the court should have excluded the evidence for a reason different from his trial objection." (*People v. Partida* (2005) 37 Cal.4th 428, 435 (*Partida*).) "A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." (*Id.* at p. 438, fn. 5.)

As our Supreme Court explained in *Partida,* "[t]he objection requirement is necessary in criminal cases because a 'contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal."' [Citation] 'The reason for the requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.'" (*Partida, supra,* 37 Cal.4th at p. 434.)

Morro's current argument illustrates this problem. He now asserts that instead of allowing witnesses to testify about the prior incident, the evidence "should have been limited to [the current victim's] testimony that he called the police after an earlier neighborhood incident." The law requires that the court and the prosecutor be given the opportunity to address the alleged problem at trial before the conviction can be overturned on that basis. Morro made no such argument in the trial court.

But even if he had, we would not agree this evidence should have been excluded. The unchallenged evidence which was admitted demonstrated Morro's behavior in connection with the charged crimes was menacing. It was Morro's own

8

statements that established he had been previously arrested and the current victim had been the one who called the police. Morro also admitted to the police officer who interviewed him that he had used slurs and profanity toward the victim because he was trying to provoke the victim into a physical fight. Morro's own brother, while testifying for the defense, acknowledged he "understood why [the victim] would be upset" with Morro, and then agreed he would not want Morro to be *his* neighbor.

Based on that unchallenged evidence, Morro's status as a neighborhood menace was essentially undisputed. Viewed in that context, the details of an additional similar incident posed little danger of prejudicing the jury on that point. Moreover, the fact the jury convicted Morro of making the criminal threat, while acquitting him of the more serious charge of assault with a deadly weapon—the alleged crime which bore a striking resemblance to the prior incident—seems to confirm the jury was not prejudiced by the evidence.

## DISPOSITION

The judgment is affirmed.


GOETHALS, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.

9