Filed 7/21/25  P. v. Wondafrash CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAGIM WONDAFRASH,<br><br>    Defendant and Appellant. | G063927<br><br>(Super. Ct. No. 19HF0422)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert A. Knox, Judge. Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

Dagim Wondafrash appeals from a judgment convicting him of misdemeanor false imprisonment. (Pen. Code, §§ 236, 237, subd (a).)[1] It is undisputed the prosecutor improperly argued during closing arguments that a past conviction showed Wondafrash had a propensity to commit the false imprisonment. We nevertheless conclude the error was harmless and affirm.

## FACTS

Wondafrash encountered N.C. while the two were separately driving toward a freeway at night. Wondafrash believed N.C. tailgated him and "nudge[d]" his bumper. Wondafrash followed N.C. into a residential neighborhood and parked behind her. He commanded N.C. to exit her vehicle and knocked multiple times on her window, requesting her license and registration. He wore sunglasses and behaved in a manner that caused N.C. to wonder if Wondafrash was a law enforcement officer.

Residents in the neighborhood became involved and Wondafrash engaged with them, at one point calling a resident an expletive. N.C. felt scared to exit her vehicle and called 9-1-1, resulting in a 24-minute recorded phone call in which Wondafrash's interactions with residents could be heard.

Sheriff's deputies arrived and arrested Wondafrash. He was charged with felony false imprisonment. (§§ 236, 237, subd. (a).)

At trial, Wondafrash confirmed he had been convicted of a felony four years before his interactions with N.C. After the close of evidence, the court instructed the jury on felony false imprisonment, including the element of menace. It defined "menace" as "a verbal or physical threat of harm. The threat of harm may be express or implied." (CALCRIM No. 1240.) It also

---

[1] All undesignated statutory references are to the Penal Code.

2

instructed on the lesser included offense of misdemeanor false imprisonment, which does not require menace. (CALCRIM No. 1242.)

During closing argument, the prosecutor invoked Wondafrash's prior conviction to show his "readiness to do evil." The prosecutor argued: "The defendant lacks credibility. The defendant has a criminal conviction, moral turpitude, a prior felony conviction, in May 4th, 2015. There's an instruction for that. 316, 'If you find that a witness has been convicted of a felony, you may consider that fact in evaluating the credibility of the witness's testimony.' And in that sense, this shows that at least in this occasion, 2015, he had a readiness to do evil. In this incident as well, all the facts and evidence shows that he carried that same readiness to do evil and he committed that prohibited act."

When Wondafrash's counsel objected, the trial court instructed the jury: "Refer back to CALCRIM 316. That is how the Court has instructed you to use or not use the fact of his prior felony conviction. Thank you." The prosecutor began again "He had a readiness to do evil--" and when counsel objected again, the court instructed: "This is argument, and the only thing I want you to do, ladies and gentlemen, is refer back to CALCRIM 316. I've read it to you. It's in your packet. That is the instruction for considering the effect of a prior felony conviction." The prosecutor then repeated: "This incident, he had a readiness to do evil." When counsel objected again, the court asked the prosecutor if he wanted to "rephrase" his argument, the prosecutor declined, and the court said to "[c]ontinue" with his arguments.

After closing, the court reminded the jury about CALCRIM No. 316. The court re-read the instruction and concluded: "So I'm pointing [the instruction] out because [Wondafrash's prior conviction] was not admitted to show propensity to do evil or to commit a crime or to commit this

3

crime. It was only received for that limited purpose as it affects the credibility of the witness."

During its deliberations, the jury submitted requests to the court—half of them about felony false imprisonment. The first sought clarification on the definition of "threat of harm" regarding "[m]enace": "Does harm mean physical harm, or emotional harm? Does fear qualify as emotional harm?" The final request asked: "[D]oes the violence or menace need to be intentional or does just the existence of violence/menace that is not intentional still satisfy the first element of 1240?"

Subsequently, the jurors reported they had "reached a decision on the misdemeanor" and "a split decision on the felony." The court redirected the jury to CALCRIM No. 3517, addressing the decision making parameters for greater and lesser included crimes.

The jury ultimately found Wondafrash not guilty of felony false imprisonment, but guilty of misdemeanor false imprisonment. He was sentenced to one year of informal probation on the condition of serving 300 days in county jail, with custody credits totaling 294 days.

DISCUSSION

We agree with the parties that the prosecutor committed error by arguing that a prior conviction showed Wondafrash had a "readiness to do evil and . . . committed [the] prohibited act" of false imprisonment. (§1101, subd. (a); *People v. Guerrero* (1976) 16 Cal.3d 719, 724 ["The reason for this rule is not that such evidence is never relevant; to the contrary, the evidence is excluded because it has too much probative value"].)

As to the parties' disagreement on whether the error was prejudicial, we agree with the Attorney General that, analyzing the impropriety as state law error (*People v. Watson* (1956) 46 Cal.2d 818, 836–

837), it was harmless because "there is no reasonable probability that the jury would have reached a different verdict . . . without th[e] comments by the prosecutor" (*People v. Jackson* (2016) 1 Cal.5th 269, 350 (*Jackson*); *People v. Centeno* (2014) 60 Cal.4th 659, 667 [improper argument viewed within context of entire closing arguments and jury instructions]).

Although the prosecutor's assertions were clearly improper, they do not support a conclusion that Wondafrash was denied due process.[2] The assertions were met by objections and clarifications. The court commendably and unmistakably remedied the improper argument by repeatedly redirecting the jurors to a sound statement of the law on the limited relevance of Wondafrash's prior conviction: "Refer back to CALCRIM 316" on how "to use or not use the fact of [Wondafrash's] prior felony conviction"; "CALCRIM 316. . . . That is the instruction for considering the effect of a prior felony conviction." "'We must assume . . . that the jury obeyed the express language of the instruction not to use the other-crimes evidence to establish defendant's character or his disposition to commit crimes.'" (*People v. Johnson* (2022) 12 Cal.5th 544, 612.) And we presume the jury followed the court's immediate admonitions. (See *People v. Osband* (1996) 13 Cal.4th 622, 676 [presumption that court admonishment cured possible prejudice].)

Moreover, the not guilty finding for felony false imprisonment shows the jury decided that Wondafrash's actions did not constitute menace. This refutes Wondafrash's theory that the prosecutor's improper argument materially influenced the outcome of the trial.

---

[2] We would in any case reach the same conclusion of harmlessness if we reviewed for prejudice under *Chapman v. California* (1967) 386 U.S. 18, 24.

We disagree with Wondafrash that the conviction on the lesser included misdemeanor must have been a close decision. The jury's requests during deliberations—beginning and ending with requests to clarify the concept of "menace" unique to felony false imprisonment—show its decision on the lesser included misdemeanor was easier than its decision on the greater charge. The jurors reported they first reached a unanimous decision on the misdemeanor before resolving its "split decision" on the felony. The sequence is consistent with the more straightforward and objective nature of the evidence relevant to the misdemeanor question, which did not involve the concept of menace. (Compare CALCRIM No. 1240 with CALCRIM No. 1242.)

The context shows the jury convicted Wondafrash independent of whether it believed he had a propensity to do evil. There is no reasonable ground to conclude it would have reached a result more favorable to him if the improper argument had not been made. (*Jackson, supra*, 1 Cal.5th at p. 350.)

DISPOSITION

The judgment is affirmed.

SCOTT, J.

WE CONCUR:

MOORE, ACTING P. J.

MOTOIKE, J.

6